TEMPLE FAY & others *vs.* FITCH WINCHESTER.

A letter of attorney, empowering the attorney to sell any of the constituent's real estate, authorizes him to sell real estate which the constituent acquires after the execution of such letter.

F., by his last will, made in 1823, devised and bequeathed his property to W., and soon after authorized him, by letter of attorney, to sell any of his (F.'s) real estate; F. afterwards acquired real estate, which W. knew would not pass by the will: W. thereupon conveyed said real estate, by virtue of his letter of attorney, for the purpose of securing the same to himself, and preventing its descent to F.'s heirs; and this purpose was known to the grantee: The grantee gave his note for said estate, payable to F., and also executed a lease thereof to F. reserving a rent equal to the interest on the note: F. remained in possession of said estate, while he lived, and it did not appear that he had any knowledge of these transactions, or that he knew that the estate would not pass by his will: After F.'s death, W. gave up said notes to the grantee, who had not recorded his deed, and he then conveyed the estate to W., who afterwards procured the deed, which he had given to said grantee, to be recorded.

*Held,* in a writ of entry by F.'s heirs against W., that his said proceedings were a fraud upon F. and his heirs; that the estate descended to them; and that, although F. intended that W should have all his property, yet his heirs were entitled to recover the estate.

WRIT OF ENTRY, in which the demandants, as heirs of Alpheus Fay, demanded possession of two undivided fifth parts of a tract of land in Southborough, called the Bellows farm. The trial was before *Wilde*, J. who reported the case as follows :

It was admitted that said Alpheus Fay, by his last will, dated April 28th 1823, and duly proved and allowed on the 7th of December 1830, after giving a legacy of one dollar to his mother, devised and bequeathed all the residue of his property to the tenant, whom he also appointed executor. At the date of the will, said Fay held three mortgages, one on each of three farms in Southborough, of which said Bellows farm was one. In the summer of 1823, he took possession of said farms, by virtue of the several mortgages, for breach of condition, and held possession until the several equities of redemption were foreclosed.

On the 20th of February 1824, said Fay gave to said Winchester, the tenant, a power of attorney, authorizing him to sell, lease or exchange, any of his real estate. Said Winchester

acted as the agent and attorney of said Fay, until his decease. On the 17th of January 1827, said Winchester made three deeds of said three farms to his father, Jacob B. Winchester, then residing at Salem ; which deeds were executed in the name of said Fay, by the tenant, as his attorney, and were recorded on the day on which said Fay's will was proved.

The demandants introduced evidence tending to prove that said deeds were made without the knowledge of said Fay, and that he was ignorant thereof to the time of his death ; and there was no evidence tending to prove that he had any knowledge of their existence. There was, however, evidence that he was intemperate, and was occasionally so infirm as to be incapable of managing his business.

Said Jacoo B. Winchester testified, that said deeds were made for the purpose of securing said estates to said Fitch Winchester, and to prevent their descent to the heirs of said Fay, and because said Fitch Winchester knew. that said estates would not pass to him under said will. And he further testified, that he was at Southborough, several times, after the making of the deeds, and before the decease of said Fay ; that he saw said Fay, at those times, but never spoke to him about said deeds or estates. The consideration for said deeds was a promissory note by said Winchester to said Fay, payable on demand and interest ; and said Winchester, at the same time, made a lease of said estates to said Fay, the rent to be equivalent to the interest of the notes, so long as Fay should remain in possession.

After said Fay's death, Fitch Winchester, the tenant, gave up these notes to J. B. Winchester, the promisor, who conveyed the estates to said Fitch, to hold the same in fee.

The tenant introduced evidence of the declarations of said Fay, tending to prove, that from the time of making said will, up to near the time of his death, he intended that the tenant should have all his property.

There was no evidence tending to prove that said Fay did or did not know that said estates would not pass to said Winchester, under said will

The demandants contended, that said power of attorney was not sufficient to authorize the conveyance of said estates ; and that said estates did not pass to the tenant by the will ; and that said deeds to Jacob B. Winchester were fraudulent and void, even if the power of attorney were sufficient to authorize any conveyance of said estates by the tenant.

The judge ruled that the power of attorney was sufficient to authorize the tenant to make sale and conveyance of the estates, and that the sale to Jacob B. Winchester was good, if there was no fraud in it ; that if the testator had knowledge of the conveyance, it was valid and not fraudulent ; that if he had no knowledge of the conveyance, yet if the tenant believed, from the testator's declarations, that it was according to his wishes, and if the jury believed that it was according to his intentions in regard to the estate, it was a good conveyance ; but if it was known to the tenant, that he was abusing his power, the conveyance was fraudulent and void. And the jury were instructed to determine whether the tenant supposed he had the right and power to make the conveyance, and if so, then to determine whether the conveyance was in pursuance of the testator's wishes in respect to the disposition of his property ; and if they found for the tenant, on these points, the verdict should be returned for him.

A verdict was returned for the tenant. New trial to be granted, if the said rulings and instructions were wrong.

This case was argued at the last October term.

*Newton & C. Allen*, for the demandants.

*Merrick & Washburn*, for the tenant.

SHAW, C. J. As we understand the case stated in this report, it is this : Alpheus Fay, the ancestor of the demandants, made his will in 1823, by which he gave all his estate, real and personal, to the tenant, Winchester. At that time, the testator held several mortgages on estates, not foreclosed. Some time after making the will, the testator executed a power of attorney to Winchester, authorizing him, amongst other things, to sell, lease or exchange real estate. One of the questions made at the argument was, whether the attorney, under this power,

could convey estate afterwards acquired by the constituent. We have no doubt, that if the authority were otherwise sufficient to convey such estate of the constituent, it would extend as well to after-purchased estate, as to estate held by the constituent at the time of the execution of the power. But the real question is of a different character.

As the law stood, when the will in question was made, the devise would not operate to pass after-acquired real estate ; and by a well known rule of law, in force in this Commonwealth, estate of which the testator had a mortgage not foreclosed at the time of the execution of the will, but foreclosed before the testator's decease, was regarded as after-purchased real estate, and did not pass by the will. This rule was known and under stood by Winchester. *Ballard* v. *Carter*, 5 Pick. 112. *Brigham* v. *Winchester*, 1 Met. 390.

As the will then stood, if there had been no republication revocation or other change, the real estate, upon which the mortgages had so become foreclosed, would have remained as undevised property, and descended to the heirs at law, notwithstanding the residuary clause in the will, giving all the real and personal property to the tenant, Winchester. In this state of things, Winchester availed himself of the power of attorney, and conveyed by deed to his father, residing in Salem, the farms in Southborough, taking his promissory note for the purchase-money, and taking a lease back to the testator ; the rent reserved being equivalent to the interest on the notes. The deeds were not recorded, and it does not appear that they were known to the testator ; nor does it appear that they were not. After the decease of the testator, the notes were given up, and J. B. Winchester, the father, executed deeds of conveyance to his son, the tenant.

This transaction, upon the face of it, bears strong marks of being colorable and pretended, and not a real and actual sale. Perhaps if it stood thus, it would be proper to submit this evidence to a jury, with instructions, that if it were colorable and pretended, and not intended as a real sale to J. B. Winchester ; if the purpose was to defeat the legal operation of the will of

the testator and the law of descent, and merely put the property in a situation to appear to pass as personal property, under the operation of the will, and prevent its going by descent to the heirs ; it was an unwarrantable use and an abuse of the power, and fraudulent ; and, as against the heirs, nothing passed by the deeds to J. B. Winchester. But as the case stands, it is expressly found, that the intent of this conveyance under the power was " to secure said estates to said Fitch Winchester, and to prevent their descent to the heirs of said Alpheus Fay, and because the said Fitch Winchester knew that said estates would not pass to him under said will." This was testified to by the grantee, and therefore this purpose must have been known to him.

We think the only legitimate and proper use which Fitch Winchester could make of the power, was to execute it for the use and benefit of the testator. It was a naked power only, unconnected with any interest in the attorney himself. To use it for his own purposes, and to defeat the will of the testator and the law of descent, with a view to make the will operate upon property, for his own benefit, upon which, by the force of law and the act of the testator, it would not operate, was a fraudulent use of it, and the estate did not pass by it.

Nor do we think the force of this consideration would be obviated by proof that the testator had the intent, or declared the intent, that all his property should go to Winchester. That intent was declared by the will itself. But the law would not have carried that intent into effect, so as to pass the after-purchased real estate ; and the devisee could himself do no act, to make the will extend further and give it a wider operation, than the testator himself had given it. It is very clear that an intent of the testator, not carried into execution, by an actual republication of the will, or other legal devising act, could not have given the devisee such after-purchased estate ; and no act of the devisee himself, in aid of such an intent, not sanctioned by the testator, could make it more effectual. The court are therefore of opinion that the conveyance by Fitch Winchester to J. B. Winchester, in the manner and for the purposes stated, was a fraud upon the testator and the heirs at law ; that nothing passed by

, it ; that Alpheus Fay died seized of the demanded premises ; and that the estate descended to the heirs at law.

*New trial ordered.*